UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael K. Castro-Jaques,   Civ. No. 18-3376 (PAM/LIB)

        Plaintiff,

v.   **MEMORANDUM AND ORDER**

Lang-Nelson Associates, Inc.,
Broadway Village Investors, LLC,
Summit/Broadway Limited
Partnership d/b/a Broadway
Village Apartments, and North
Suburban Towing, Inc.,

        Defendants.

---

This matter is before the Court on three Defendants' Motion to Dismiss the Second Amended Complaint.

**BACKGROUND**

Plaintiff Michael Castro-Jaques[1] instituted this action in Minnesota state court. He claims that his landlords, Defendants Broadway Village Investors, LLC and Summit/Broadway Limited Partnership, and the apartment complex's manager, Defendant Lang-Nelson Associates, Inc., violated the Fair Housing Act, the Minnesota Human Rights Act, common law, and other state statutes by towing his car and scrapping it when he did not pay to recover it, and by keeping his security deposit without giving him the notice Minnesota law requires. Also named as a Defendant is North Suburban Towing ("NST"),

---

[1] The pleadings and docket spell Plaintiff's name as Castro-Jacques. At the hearing, Plaintiff's counsel clarified the correct spelling, which is how it now appears in the caption.

the company that towed his car from the complex's parking lot.

Castro-Jaques moved into an apartment in the Broadway Village Apartments complex in Bloomington in 2015. (2d Am. Compl. ¶ 9.) In September 2017, Castro-Jaques was diagnosed with hemochromatosis, a condition that prevented him from working or living alone, and indeed from even climbing the stairs to get to his apartment. (Id. ¶¶ 20-21.) He asked the apartment management office if he could terminate his lease early and provided a letter from his healthcare providers regarding his condition. He asked to be released from the 60-days' notice requirement and said that he could move out by the end of October. (Id. ¶¶ 22-24.) Castro-Jaques stopped living at the apartment but paid rent through the end of October and kept his car in the apartment's parking lot.

In late October, Castro-Jaques received notice from North Suburban Towing that his car had been towed and that he had to pay $176 to get the car back. (Id. ¶ 27.) He called the towing company who claimed that the landlord had requested that the car be towed. (Id. ¶ 30.) According to Castro-Jaques, the apartment manager offered to pay to recover the vehicle, but then refused to do so when the charges were more than he expected. (Id. ¶ 34.) Because Castro-Jaques was disabled and could not work, he could not pay to get his car out of the impound lot and the car was ultimately scrapped. (Id. ¶ 35.) He claims that he still owes more than $1,500 to the towing company. (Id. ¶ 36.)

Castro-Jaques also claims that the moving Defendants—Lang-Nelson, Broadway Village Investors, and Summit/Broadway—wrongfully withheld his security deposit after he moved out and did not give him notice of this as required by Minnesota law. The Second Amended Complaint contains nine counts. Count 1 claims civil conversion and Count II

2

claims civil theft, both against NST and Defendant Lang-Nelson. Counts III, IV, and V claim disability discrimination and retaliation under the Minnesota Human Rights Act ("MHRA") against the moving Defendants. Count VI is a claim under Minn. Stat. § 570B.178 for wrongful refusal to return security deposit, also against the moving Defendants. Counts VII and VIII claim violations of the Fair Housing Act ("FHA") against the moving Defendants, and Count IX is an unlawful-towing claim against NST.

Defendants seek to Dismiss Castro-Jaques's Second Amended Complaint, arguing that he improperly served several Defendants and as a result, his MHRA claims are untimely, and also that several other claims fail to state claims on which relief can be granted. Castro-Jaques in turn contends that the Motion to Dismiss is untimely, as Defendants' first Motion to Dismiss was brought more than seven days after the Notice of Removal. Fed. R. Civ. P. 81(c)(2)(C). But even assuming that the first Motion to Dismiss was untimely, Castro-Jaques amended the Complaint and Defendants responded in the time the Court allowed. The instant Motion is not untimely.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true.

3

Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678.

## A. Statute of Limitations

The statute of limitations for MHRA claims is one year. Minn. Stat. § 363A.28, subd. 3. The Second Amended Complaint alleges that Castro-Jaques first received notice that his car had been towed in late October 2017; thus, the statute of limitations for MHRA claims arising out of the tow ran in late October 2018.

Castro-Jaques emailed Defendants' counsel a copy of the summons and complaint on October 16, 2017, within the statute of limitations. However, the acknowledgment-of-service forms attached to the e-mail were old service forms. On November 5, 2018, defense counsel emailed Castro-Jaques and attached the current versions of the forms, asking that counsel redraft the acknowledgments of service and send them back. Castro-Jaques's attorney responded that acknowledgements were unnecessary as Defendants were served pursuant to Minnesota's rules for personal service. The parties hotly dispute the date the lawsuit can be deemed to have commenced for purposes of the MHRA statute of limitations.[2]

---

[2] Plaintiff argues that his MHRA claim related to the failure to return his security deposit is timely in any event, because he did not receive notice of Defendants' intent to keep his security deposit until the middle of November 2017, and he effected personal service on Defendants on November 13, 2018. Defendants respond that Plaintiff's MRHA claims do not mention the failure to return security deposit as a potential MHRA violation.

4

Defendants point out that Minnesota courts warn litigants about filing lawsuits too close to the expiration of the statute of limitations, because under Minnesota law mailing is not service, and service by mail is not complete until the acknowledgments are executed and returned. Coons v. St. Paul Cos., 486 N.W.2d 771 (Minn. Ct. App. 1992). Moreover, because defendants have 30 days to return the acknowledgments and thus let the statute of limitations run before executing the acknowledgments, "service by mail should be avoided at any time near the end of the period of limitations." 1 Herr & Haydock, Minnesota Practice § 3.3 (1985).

But as the Coons court also stated, "plaintiffs should secure the cooperation of defendants before attempting service, or else plaintiffs should choose another method of service." Coons, 486 N.W.2d at 775. This is what Castro-Jaques asserts that he did: he thought he had Defendants' attorney's consent to personal service by email, which does not require the return of acknowledgement forms. Castro-Jaques asks the Court to apply equitable tolling principles and find that his MHRA claims are timely.

There are multiple fact issues regarding service that are not appropriate for resolution at this preliminary stage of the litigation.[3] Equitable tolling may well apply, even if Defendants are correct that the service by email did not substitute for personal service. The Motion to Dismiss on this issue is denied.

---

[3] Defendants also claim that proper service was not effectuated on the two Broadway Defendants until December 2018. This contention is without merit.

**B.     Failure to State a Claim**

Defendants ask the Court to dismiss for failure to state a claim Castro-Jaques's claims for conversion, civil theft, and the claims under the FHA.

**1.     Conversion**

Under Minnesota law, a claim for conversion requires a plaintiff to prove that he holds a property interest and that the defendant deprived him of that interest. Olson v. Moorhead Country Club, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997). Defendants contend that Castro-Jaques's conversion claim fails because he consented to NST retaining his car. See Damon v. Groteboer, 937 F. Supp. 2d 1048, 1077 (D. Minn. 2013) (Tunheim, J.) (noting that consent is a defense to a claim for conversion).

Minnesota's towing law provides that failure to reclaim a vehicle within 45 days constitutes "consent to transfer the title to, and disposal or sale of, the vehicle." Minn. Stat. § 168B.07, subd. 4. But the statute also requires that a towing company send a second notice to the car's owner after 30 days; Castro-Jaques contends that he did not receive any second notice, and thus that the statute's consent provision does not apply. Defendants argue that Castro-Jaques did not plead that the towing company did not send the notice, only that Castro-Jaques did not receive the notice. This is too fine a distinction. Castro-Jaques's allegation that the towing company did not send the second required notice is sufficient to withstand a motion to dismiss on the issue of consent. The Motion as to this claim is denied.

6

## 2. Civil Theft

A claim for civil theft requires Castro-Jaques to establish that Defendants "stole" his property. Minn. Stat. § 604.14, subd. 1. "Steal" in this context "means that a person wrongfully and surreptitiously takes another person's property for the purpose of keeping it or using it." TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC, 890 N.W.2d 423, 431 (Minn. Ct. App. 2017).

Defendants argue that Castro-Jaques's theft claim fails because he has not pled, and cannot establish, that Defendants took his car for the purpose of keeping or using it. Castro-Jaques contends that Defendants "took the vehicle with the intent to keep or use it until [Castro-Jaques] paid NST compensation for the unlawful towing" and that Defendants "used [Castro-Jaques's] vehicle as collateral by scrapping it and keeping the proceeds." (Pl.'s Opp'n Mem. (Docket No. 51) at 17.) At this preliminary stage, Castro-Jaques has sufficiently pled his theft claim, and the Motion on this point is denied.

## 3. FHA

Defendants argue that Castro-Jaques's two FHA claims fail because Castro-Jaques has not produced any evidence, direct or otherwise, to permit an inference of discriminatory intent. They cite McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) in support of this argument. But McDonnell Douglas sets forth the "order and allocation of proof in a[n] . . . action challenging . . . discrimination." Id. at 800. The evidentiary burdens discussed in McDonnell Douglas are not appropriately considered on a motion to dismiss. Castro-Jaques has not produced any evidence because discovery has not yet begun. Should he fail to marshal evidence in support of his FHA claims, Defendants may move for summary

judgment on those claims.

Defendants also contend that Castro-Jaques did not in fact make an accommodation request regarding parking, and thus he cannot bring a FHA claim about the towing of his car. But Castro-Jaques has pled that he made a request for reasonable accommodation with regard to his apartment and that parking is an element of his use and enjoyment of his apartment. These allegations are plausible and the Court must therefore accept them as true. Castro-Jaques has sufficiently pled his FHA claims.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 46) is **DENIED**.

Dated: August 1, 2019

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge